We'll hear the last case to be argued, Chen v. Dunkin' Brands. Good morning, Your Honors. May it please the Court, there are two issues presented in this case. First is whether Dunkin' can be lawfully subjected to personal jurisdiction in New York by non-resident plaintiffs, and the second issue is whether it's plausible for Dunkin's Angus steak representations to mislead or deceive consumers to believe that its sandwich products include an intact piece of Angus beef when in fact the sandwiches instead include a beef patty containing ground beef with fillers and binders. Beginning with the state law consumer fraud claims, the District Court erred in finding in their own mind that a reasonable consumer could not be misled by Dunkin's advertising of its breakfast sandwiches as containing Angus steak. The essence of the plaintiff's now appellant's claim is that it was ground beef together with fillers and binders. Can't you have, like, chopped steak, hamburger steak? Those are types of foods that you sometimes see? You might see hamburger steak, but typically when you refer to steak, you're referring to an intact piece of meat. Counsel, the advertisements themselves, all of them, focus, I mean, you couldn't have a closer focus of the sandwich itself, including that it is clearly a patty and not an intact piece of steak. So how could any consumer be confused? If they're trying to deceive consumers, why would they repeatedly during their commercials show, like, this is from the record of how, look how close up that is. But I looked at the commercials myself. From several seconds, they're showing the sandwich as close as you could possibly see. How could a consumer be confused that it was intact if they are seeing a patty? Well, the test is whether it's plausible that they could be confused. How is it plausible they could be confused if they're showing them the patty in the commercials? If they didn't show the patty, I think there are other issues, but that would be a closer question. But they show the patty repeatedly close up. And the price? And the price? Well, there's two points to be made. First, Your Honor, the Angus steak representations appeared in various forms. The product itself was labeled that way. The television commercials, which focused on argument is that a reasonable consumer would believe that he or she were buying a steak, as in a piece of a steak. That's the claim? That's the claim. But I'm representing now that the complaint talks about Even with the photographs and the pricing, that's still the argument. And that's a plausible argument, you say? It's plausible because the emphasis of the advertising campaign overall is that it's steak. And the advertising doesn't disappear in the commercial. And the complaint does not You have 50 paragraphs of your complaint going through all the commercials, and then in your brief, and I think today you're suggesting to us, well, it's really other things that were deceiving them. Well, just because we added a lot of detail about the commercial doesn't mean that the complaint doesn't Well, you had no detail about the commercials. You had no detail about, for example, in the store. When you walk in the store, you didn't allege when you walk into the store there's no pictures of the sandwich or anything like that, right? Well, correct. There was more detail about the commercial. But the other forms of advertising were alleged. What about their separate argument that in terms of Ms. Chen and any harm that she's paid a premium because of the deception, right? That she was deceived into believing it was a piece of steak. She thought it was a superior product because it was representative of being a steak. Paid a premium, right? The injury is that she paid a premium, right? Yes. She felt she was paying more than what she got. Paragraph 104, 116 of your complaint, you allege that she went in on June 21st and bought it, obviously saw that it was a patty, and then paid the same price on June 24th. If she was paying that extra money because she believed it was steak and was deceived, why would she have bought the exact same product three days later for the exact same price? I don't know why she would have. But at least the first time she bought it, she was clearly able to be deceived by the representations of Dunkin. But if she didn't pay a premium for it, it wouldn't have affected her. She did pay a premium for it for at least the first time. Your argument has to be that but for the deception, she would not have paid what she paid for the product. That has to be in terms of the harm, right? Yes. I'm just focusing on the first sale. Once she found out on the first sale what the product was, she paid it again on another sale. She may have enjoyed the sandwich. I don't know why. Let me ask you about the personal jurisdiction. Some of the plaintiffs are from other states. You have multiple states involved? Yes. And have you asserted multiple state laws in the complaint? Yes. And some of the plaintiffs, their claims were dismissed solely for lack of jurisdiction? Yes. I think it was four or five of the plaintiffs were dismissed on that basis and one. So the merits of the state law claims were never considered? They were considered for one plaintiff, the New York plaintiff. Other than the New York plaintiff? Correct. All right. And what's your argument on personal jurisdiction then? We don't seem to have a Second Circuit case on New York law, but we do have one on Connecticut law. We have the Brown decision on Connecticut law and we have Daimler. Why do we not follow Brown for purposes of the New York statute? The difference between Brown and Connecticut and New York is that Connecticut, with their registration statute for corporations, was deemed not to provide consented jurisdiction. Right. So how is the New York statute substantively different, if it is, from the Connecticut statute? Well, we're asserting consent-based jurisdiction based on that statute and the New York version of registration has been found to provide such consent. They cite two recent Second Department cases, Ibar and their 28-J letter, this Best Case, Best v. Gunthery, a Fourth Department case, where New York courts are now saying in light of Daimler that they're not even construing their own statute to provide consent to general jurisdiction by registering. So if the New York courts are not reading their own statute that way, why should we? Well, there's definitely a lot of confusion over the issue. I don't disagree with that. As far as this particular case, that issue was not raised previously. So our position is that the consent following the Brown . . . I looked at the brief below. There's a whole section about how registering to do business in New York does not comply, does not create general jurisdiction. I don't understand how it's waived. Why would they waive that? Their argument was based on the impact of Daimler. And the New York courts, the Second Department and the Fourth Department, based upon Daimler, concluded that their own New York law did not provide . . . Well, previously, the . . . It's all based on Daimler. That's true. Previously, however, the understanding overall for New York was, and this court in Brown even said it, that the registration statute, quote, quoting Brown, has definitely been construed, end quote, to provide consent to jurisdiction. That was not challenged below. All right. You've saved some time for rebuttal. We'll hear from the other side. May it please the Court, William Perdue on behalf of Duncan Brands, Inc., parent company of the Duncan Franchisor. The Court should affirm the decision below for two basic reasons. First, the district court correctly held that exercising general jurisdiction in New York based solely on Duncan's registration to do business here would be unconstitutional under Daimler. But this Court does not even have to reach that constitutional question, because recent New York intermediate appellate decisions make clear that under New York law, registration does not entail consent to general jurisdiction. Second, the district court correctly held that Plaintiff Chen has no plausible claim of deception. Duncan's ads contain zoomed-in images of steak patties, and Chen herself alleges that she purchased these sandwiches on multiple occasions with the same patties inside. I'd like to... Would that issue address the claims of the other plaintiffs, including under State law? I mean, how do we... The other State law claims were not analyzed. They were not analyzed in the merits. The claims of the other plaintiffs were dismissed solely on personal... So your second point works only as to Chen? I guess that's my question. Yes, because the other plaintiffs are out of the case on jurisdictional grounds. I'd like to start with personal jurisdiction and actually by providing an update for the court on New York law. In my final preparations for this argument last night, I learned that in addition to Ibar and Best, there's actually now a third New York intermediate appellate court decision squarely holding that registration does not entail consent under New York law. It's a decision by the first department decided just one week ago. The case is FECA, F-E-K-A-H versus Baker Hughes, Incorporated. The citation is 2019 West Law 5232566. Again, this was decided just one week ago. I'm happy to provide a 28-J letter about it if that would be helpful to the court. That's sufficient, what you've just given us. Great. So I think this just really underscores you now have three intermediate appellate court decisions. They're recent, on point, unanimous decisions squarely holding that registration does not entail consent. Their whole theory, as you heard, is based on consent. And so those cases just undermine the State law underpinning of their claim. And I think, you know, this, as Judge Chin, as you pointed out, you know, this court had the same sort of situation in Brown. And I think this case is actually much easier than Brown for this court. In Brown, you had one intermediate appellate decision that contained a statement that registration in Connecticut actually did entail consent to general jurisdiction. But this court determined that the statutory text and structure suggested otherwise, and that statement was just dicta. Here, you have — you don't have to roll up your sleeves and do that kind of de novo State statutory interpretive analysis yourself. These three cases have done it for you. So you can just follow them. You would need a really compelling reason to rule otherwise. Plaintiff's counsel in their presentation referenced this pre-Daimler consensus, and I do want to address that very briefly. You know, Ibar in particular is a very detailed scholarly decision that is intensely aware of that consensus, and it traces it all back to Judge Cardozo's decision in Bagdon. And Ibar explains in great detail why the interpretation of the registration statute in Bagdon just wasn't quite as broad as some subsequent cases had suggested. What Ibar explains is that under Bagdon, the registration statute entails consent not to general jurisdiction itself, but to the appointment of a local process agent authorized to receive service of process in New York. Under Pennoyer's territorial framework, that's enough for personal jurisdiction, general or specific. But after Daimler, we know it's not. So, you know, Ibar and Best and FACA, they were just as bound by Bagdon as this Court would be, and they found it to be distinguishable. If the Court doesn't have any further questions about personal jurisdiction, I'll move to the merits. And I think, you know, Judge Bianco, I think you pointed to what I think is the easiest way for this Court to resolve this case, which is just the ads themselves. I think if you – if the – if Your Honors have not yet viewed the ads, I would encourage you to do so. The videos themselves are part of the record. We provided links in our brief. And if you watch them, there are zoomed-in, close-up images of patties for a significant portion of all three of these advertisements. I think if you watch them, you just can't come away with any conclusion other than that this is – this is a – this is not a steak, you know, a single intact piece of meat. It's a steak sandwich with a patty on it. The – my friend on the other side mentioned these other possible advertisements that Duncan may have – may have put out there. There's just no detail about them in the complaint that there are point-of-purchase advertisements and in-store menus, but there's just no detail about what the statements are in those – in those advertisements, what pictures accompany them, what text accompanies them. There's just no detail at all. And this Court's decision in Fink, this Court made clear that context is key. You can't cross the threshold from possibility into plausibility without – without actually providing the actual ads themselves and their full context. Beyond the ads themselves, there's also Ms. Chen's own conduct. As Your Honors pointed out, she – you know, the – her story, the story you'd have to believe to allow this claim to proceed is that she watched these ads. She said she saw them repeatedly. I think the only inference you can draw is that she saw the whole thing, including all the visual disclosures in them. She went to a Dunkin' Donuts franchise in Flushing. She put down her $2 or $4 for an Angus steak and egg snack-and-go wrap or a sandwich. She saw it. She held it in her hand. She ate it, presumably patty and all. And then three days later, she came back and did the whole thing again. She must have enjoyed it. I think she must have, and I think she also couldn't have been deceived. And that goes for the first time and the second time. If she had been deceived after she learned the truth, you would expect something to change, but nothing changed, in fact. At this point, if the Court has no further questions, we'll rest on our briefs and respectfully request that the decision below be affirmed. Thank you. We'll hear the rebuttal. Returning to the jurisdiction, even if consent to personal jurisdiction by the registration statute is deemed constitutionally constrained, personal jurisdiction should still be available if the jurisdiction is not restricted by the 14th Amendment. So it's not an all-or-nothing situation. In a case, Semir v. Learjet Acquisition, I think it was not in our brief, but it's sort of this intermediate approach, which they don't obliterate the consent from the registration statute. They say the consent exists to the extent personal jurisdiction would be constitutional. So using that type of standard, in this case we have consent and we have contact with New York. And the contact is related to the claims by both the resident plaintiff and the non-resident. So it's the same issue, it's the same advertising, it's the same sandwich, it's the same ingredients, all of which are controlled by Duncan. So if we look at that and we take into consideration the fact that the claims are related and there is consent, and we use those as factors, we can still find acceptable jurisdiction. And just to summarize. Thank you. You're over. Thank you. We will reserve decision. The last case is on submission. Accordingly, I'll ask the clerk to adjourn.